UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mark-Brian Kline,<br><br>*Plaintiff*,<br><br>v.<br><br>Alien Property Custodian Representative,<br><br>*Defendant*. | Civil Action No. 23-398 (MEF)(AME)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes full familiarity with the allegations and procedural history of this case.

\* \* \*

The United States, on behalf of the Defendant, has moved to dismiss. It argues, among other things, that the Court does not have jurisdiction. See Motion to Dismiss at 1.

The motion is granted, for the reasons set out below.

\* \* \*

The Plaintiff sued the Alien Property Custodian Representative in connection with a local home foreclosure. See Complaint at 2, 6.

The Alien Property Custodian Representative was, at is core, a part of the federal government with responsibilities related to money or property seized by, or conveyed to, certain arms of the United States. See McBride v. Mnuchin, 2019 WL 3323412, at *1 n.3 (D.D.C. July 4, 2019).

But the Office of the Alien Property Custodian Representative no longer exists. It was abolished. See Rogers v. Ercona Camera Corp., 277 F.2d 94, 95 n.1 (D.C. Cir. 1960); Chery v. Alien Prop. Custodian, 2022 WL 765087, at *2 n.1 (S.D. Fla. Mar. 14, 2022); McBride, 2019 WL 3323412, at *1 n.3.

In 1966, its functions were transferred to the United States Department of the Treasury. See Transferring Jurisdiction Over Certain Blocked Assets from The Attorney General to The Secretary of the Treasury, Exec. Order No. 11281, 31 Fed. Reg. 7215 (May 13, 1966); Chery, 2022 WL 765087, at *2 n.1 ("In 1917 . . . President Woodrow Wilson first created the Office of Alien Property Custodian, which . . . seize[d] the property and assets of foreign enemies and their allies. It appears that the Office was then terminated and reinstated several times, before finally being abolished . . . . Additional functions were then transferred to other federal governmental entities. See Exec. Order 11281, 31 Fed. Reg. 7215 (1966).") (cleaned up); McBride, 2019 WL 3323412, at *1 n.3 ("The Alien Property Custodian was originally responsible for" certain property seized by the United States, and "[u]nder the original statutory text [of the relevant statute], that property might be held by either the Custodian or by the Treasurer of the United States. The position of Alien Property Custodian was eliminated . . . . Control of foreign funds was then transferred from the Office of Alien Property to the U.S. Treasury Department.") (cleaned up).

In light of this, and because the Plaintiff is pro se, the Court interprets his lawsuit against the Alien Property Custodian Representative as running against the United States Department of the Treasury.

\* \* \*

For the Court to have jurisdiction over a lawsuit against the United States Department of the Treasury, there must be (1) a waiver of sovereign immunity and (2) the claims in question must "fall[] within the terms of the waiver." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("sovereign immunity shields the Federal Government and its agencies from suit") (emphasis added).

\* \* \*

The Court assumes for present purposes[1] that the first requirement is met.

This is because the Plaintiff has sued under the Trading with the Enemy Act.  See Complaint at 2, 6.  And that Act includes a waiver of sovereign immunity.  See 50 U.S.C. § 4309(a); see also Jackson v. Irving Tr. Co., 311 U.S. 494, 500 (1941) ("The United States had expressly consented in Section 9(a) of the Trading with the Enemy Act[2] that suits might be brought by a non-enemy claimant to have his claim against an enemy debtor satisfied out of the latter's property held by the Alien Property Custodian"); Kogler v. Miller, 288 F. 806, 808-09 (3d Cir. 1923) (noting that Congress created a right of action in Section 9(a) of the Trading with the Enemy Act, thereby waiving its sovereign immunity as to certain claims); Loomis v. Priest, 274 F.2d 513, 518 (5th Cir. 1960) ("[t]he surrender of sovereign immunity to suit embodied in § 9(a) extends only to non-enemies laying claim to property which had been vested in or seized by the Custodian pursuant to 'capture' by the President or his agents, of property, rights or claims belonging to or held on behalf of an enemy").[3]

But the second requirement is not met.

This is because the Plaintiff's claims do not "fall[] within the terms of the waiver."  White Mountain Apache Tribe, 537 U.S. at 472.

The relevant waiver is at Section 9(a) of the Trading with the Enemy Act.  See Jackson, 311 U.S. at 500; Kogler, 288 F. at 808-09; Loomis, 274 F.2d at 518.

---

[1]   See footnote 3.

[2]   Section 9(a) of the of the Trading with the Enemy Act is in the United States Code at 50 U.S.C. § 4309(a).

[3]   There may possibly be an argument that the waiver of immunity set out in Section 9(a) has not survived the elimination of the Office of the Alien Property Custodian.  See generally Lane v. Pena, 518 U.S. 187, 192 (1996) ("a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign").  Reaching and resolving that question is not necessary here.

That Section of the Trading with the Enemy Act allows for a lawsuit when, among other things, the Alien Property Custodian has "seized" property, or when such property has been "conveyed" or "transferred" to the Custodian.[4]

But there are no such allegations here.[5]

The Complaint alleges the Plaintiff's home was to be sold in a sheriff's sale, see Complaint at 1-3, and that a New Jersey state court rejected the Plaintiff's arguments as to why the house should not be foreclosed. See id.

---

[4] See 50 U.S.C. § 4309(a); see also Can v. United States, 820 F. Supp. 106, 110 (S.D.N.Y. 1993) ("Plaintiffs also allege that TWEA [the Trading with the Enemy Act] provides the Court with subject matter jurisdiction. However, TWEA provides for a cause of action against the United States only when assets have been seized" by the United States); Jackson, 311 U.S. at 500 ("The United States had expressly consented in Section 9(a) of the Trading with the Enemy Act that suits might be brought by a non-enemy claimant to have his claim against an enemy debtor satisfied out of the latter's property held by the Alien Property Custodian."); Tran Qui Than v. Regan, 658 F.2d 1296, 1301 (9th Cir. 1981) (holding the plaintiff's claim could not be reviewed under Section 9(a) because it "provides a means 'through which eligible persons may seek recovery of property seized under the (TWEA)'" and the plaintiff "cites no evidence in the record that [the relevant property] ha[s] been conveyed, transferred, assigned, delivered or paid or otherwise seized by the United States government") (cleaned up); Cornet Stores v. Morton, 632 F.2d 96, 98 (9th Cir. 1980) (holding that because "Section 9(a) sets forth an administrative scheme through which eligible persons may seek recovery of property seized under the Act" and import and export duties were not property seized by the United States within the Act, Section 9(a) did not "grant jurisdiction to the district courts to hear" such cases); McBride, 2019 WL 3323412, at *4 ("TWEA permits a party to file suit in federal district court against the Secretary when the filing party claims a right to an 'interest, right, title, or debt' conveyed to and held by the Secretary. See 50 U.S.C. § 4309(a). For TWEA to apply to a claim for relief, a transfer of property to the Secretary must have occurred. . . . Such a property transfer is a requisite element of a TWEA claim.").

[5] The Court reads the pro se Complaint broadly, as required. See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011).

4

But there are no allegations that the United States, the Department of the Treasury, or any other agency of the United States took ("seized") the house, or that the house was ever given ("conveyed" or "transferred") to the United States, the Department of the Treasury, or any other agency of the United States.

Indeed, the Complaint does not allege that the United States, the Department of the Treasury, or any other agency of the United States holds or ever held any property or money of the Plaintiff's, or were involved in either the home foreclosure or the state court's apparent rejection of the Plaintiff's claims.[6]

The Plaintiff must make allegations that fit under the waiver of immunity set out in the statute he invokes, the Trading with the Enemy Act.[7]  As noted just above, he has not done so.

Therefore, the waiver of immunity is not triggered, and the United States' immunity remains intact. This Court lacks jurisdiction to hear the case.  See Loomis, 274 F.2d at 518 ("The surrender of sovereign immunity to suit embodied in § 9(a) [of the Trading with the Enemy Act] extends only to non-enemies laying claim to property which had been vested in or seized by the Custodian pursuant to 'capture' by the President or his agents . . . . It was necessary, therefore, that appellant bring himself within the terms of these statutes in order to confer jurisdiction upon the court below."); Pfleger v. United States, 121 F.2d 732, 735-36 (D.C. Cir. 1941) (holding there was no jurisdiction under the Trading with the Enemy Act because the relief requested was not property in "the hands of the custodian" and therefore the appellant did not bring "himself within the terms of the Government's consent to be sued" and so "the trial court was without jurisdiction"); cf. Jackson, 311 U.S. at 500; see generally White Mountain Apache Tribe, 537 U.S. at 472 ("[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving

---

[6]  The Complaint refers in passing to an exhibit titled "Captured Property Receipt."  See Complaint at 9.  The exhibit appears to be a copy of the Plaintiff's birth certificate.  See id. at 17.  There are no allegations that the United States has seized, or has possession of, the Plaintiff's birth certificate.

[7]  The Plaintiff does not identify any other waiver of sovereign immunity that may apply to this case.

sovereign immunity, together with a claim falling within the terms of the waiver") (cleaned up).

The motion to dismiss is granted.

IT IS on this 22nd day of April, 2024, so **ORDERED**.

                                        Michael E. Farbiarz, U.S.D.J